IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 18, 2011 Session

**JOSEPH S. LUCAS, JR. v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Williamson County**
**No. CR-024729     Timothy L. Easter, Judge**

---

**No. M2011-00316-CCA-R3-PC - Filed May 9, 2012**

---

The Petitioner, Joseph S. Lucas, Jr., appeals the Williamson County Circuit Court's denial of post-conviction relief from his guilty plea to rape of a child and resulting twenty-five year sentence. On appeal, he contends that (1) his guilty plea was not voluntarily and knowingly entered, (2) trial counsel rendered ineffective assistance by failing to preserve a suppression issue for appeal, failing to address waiver of the Petitioner's ex post facto rights during sentencing, and failing to prepare witnesses for the sentencing hearing, and (3) appellate counsel rendered ineffective assistance by failing to include transcripts of the suppression hearing and the guilty plea hearing in the record on direct appeal, failing to request a rehearing, and failing to argue that the Petitioner's sentence constituted cruel and unusual punishment in violation of the Eighth Amendment. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and JEFFREY S. BIVINS, JJ., joined.

Ernest W. Williams, Franklin, Tennessee, for the appellant, Joseph S. Lucas, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Kim Helper, District Attorney General; and Mary K. White, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The facts of this case were recited by this court in the direct appeal:

> A Williamson County grand jury returned a three-count indictment charging the defendant with two counts of rape of a child and one count of aggravated sexual battery. The indictment alleged that each of the offenses had occurred between May 2005 and September 2005 against the defendant's granddaughter ("the victim"), a child less than thirteen years of age. The State later filed a Bill of Particulars, which stated that the offenses had occurred during "the summer of 2005."
>
> Following his indictment and arrest, the defendant made a detailed statement to police detectives. The defendant admitted that, while he and the victim were "playing doctor," he had touched the victim's vaginal area, that he had forced her to perform fellatio on him, and that he had ejaculated in his hand. When asked when the incident had occurred, the defendant replied "[t]he last part of the summer" of 2005. During the same interview, the defendant also admitted sexually molesting another minor granddaughter, as well as his three daughters.

State v. Joseph S. Lucas, Jr., No. M2007-01411-CCA-R3-CD, Williamson County, slip op. at 2 (Tenn. Crim. App. Sept. 26, 2008), perm. app. denied (Tenn. Mar. 16, 2009).

At the guilty plea hearing, the Petitioner affirmed that he understood he had the right to a trial at which the State would carry the burden of proof, to be represented by an attorney at all stages of the proceedings, to confront his accusers, to choose whether to testify at a trial, and to an appeal in the event he were convicted. He said he understood that he gave up those rights by pleading guilty and that the conviction could be used to enhance the sentence of any future conviction. He said that he went over his rights with trial counsel and that he did not have any questions about his rights.

The Petitioner testified that he understood that he was pleading guilty to rape of a child, an offense for which probation could not be granted. He said he understood that the plea agreement contained no provision regarding the sentence, that the range of punishment would be from fifteen to twenty-five years, and that he would be required to serve 100% of his sentence. Trial counsel told the trial court, "the mitigating sentence starts at 13.5 years." The trial court again asked the Petitioner if he understood the range of punishment, and he

said he did.  He said he understood that he could be sentenced to twenty-five years at 100% and that he would be able to appeal the sentence imposed.

The Petitioner testified that he understood the elements of rape of a child.  He said he went over documents titled "Waiver of Trial by Jury" and "Request for Acceptance of Plea of Guilty" with trial counsel and signed the documents.  He said that he knew what he was doing and that he was not under the influence of anything that could impair his judgment.  When asked if the trial court should have any concern that the Petitioner would later allege that he did not know what he was doing when he entered his guilty plea, the Petitioner responded, "No, Sir."  When asked if the court should have any concern that the Petitioner would later allege that he "had a weak or a lousy or bad attorney in this matter," the Petitioner responded, "No, Sir, I think she's done a pretty good job."   He stated that he wanted to plead guilty, that he was not forced to enter into the plea agreement or promised anything in exchange for his plea, and that he entered into his plea knowingly and voluntarily.  He agreed he was pleading guilty to rape of a child because he was guilty of the offense.

At the post-conviction hearing, the Petitioner testified that he was seventy years old when he entered his guilty plea and that he had no previous experience with the criminal justice system.  He agreed that in exchange for his plea, the State dismissed one count of rape of a child and one count of aggravated sexual battery.  He said that he met with trial counsel five or six times and that they met for thirty to forty-five minutes each time.  He said they discussed the possibility of a mitigated sentence at the first meeting.  He said she informed him that the standard range for the sentence was fifteen to twenty-five years but that he could possibly be sentenced to as little as thirteen and one-half years as a mitigated offender.  He said that based on his discussions with counsel, his understanding was that "it looked like I would have no trouble getting 13 and [one-]half years."  He said counsel never discussed the possibility of waiving his ex post facto rights during sentencing.  He said that on the day he entered his plea, he discussed his plea agreement with counsel for fifteen to thirty minutes.  He agreed the plea agreement made no mention of his being sentenced as a mitigated offender.

The Petitioner identified two emails sent to him by trial counsel and they were introduced into evidence.  In the first email, dated February 13, 2007, counsel wrote:

> . . . By having a sentencing hearing, the judge could possibly consider you as a mitigated offender and the beginning sentence could be 13.5 years.  You also could appeal any sentence the judge renders.  Having said that, I doubt seriously that Judge Easter would sentence you to only 13.5 years.  In fact, at a

-3-

sentencing hearing, he more likely would sentence you to more than 20 years . . .

In the second email, dated February 19, 2007, counsel wrote:

> As your lawyer, I have to forewarn you of the danger of going to trial. We are unable to present any type of defense since your confession will be admissible. You will be convicted of all three counts. Additionally, the State could indict you for more charges against your other granddaughter . . . . The sentencing range is 13 years (mitigated) to 25 years. You could possibly get less than 20 years. And you would be able to appeal the sentence should it be more than that . . . .

The Petitioner testified that he understood mitigation to mean that he "would be considered somebody worthy of having some amount of time taken off because of the good that I had done for society." He agreed that before sentencing, he gave statements to the police in which he admitted committing offenses against his daughters and his other granddaughter but said he still believed he would receive a mitigated sentence because he "felt that a person's life is his whole life, not just the bad parts." He did not remember the term "mitigation" being mentioned during his sentencing hearing. He agreed he received the maximum possible sentence.

On cross-examination, the Petitioner agreed that he pled guilty because he thought he would be sentenced to thirteen and one-half years at most. He agreed that he met with trial counsel numerous times and that she told him he would likely be convicted of all charges at a trial. He acknowledged counsel told him that the State could also seek additional charges based on incidents with his other granddaughter. He agreed that two charges were dismissed pursuant to the plea agreement and that the signed plea agreement stated, "I fully understand the nature of my actions here today, and that my actions are voluntary and not the result of force, threats or promises of any nature."

The Petitioner acknowledged that trial counsel mailed him a copy of the plea agreement a week before the guilty plea hearing and that he had plenty of time to review the agreement and ask counsel questions about it. The agreement stated that all sentencing issues would be determined by the trial court, but it did not state that the Petitioner would be sentenced to thirteen and one-half years. He acknowledged that although counsel told him he could "possibly" be sentenced as a mitigated offender, she also said that she seriously doubted he would be sentenced to thirteen and one-half years and that he would most likely be sentenced to twenty years or more. He agreed the judge told him at the guilty plea hearing that all sentencing issues would be determined by the court and that the range of punishment

would be from fifteen to twenty-five years. He was not told that thirteen and one-half years would be the maximum sentence. He said he did not tell the court that he believed he would receive a mitigated sentence because he was "beside" himself at the hearing. He agreed he told the court that he understood the rights he waived pursuant to the plea agreement and that he entered the plea voluntarily. He acknowledged that counsel met with his wife and arranged for witnesses to testify at his sentencing hearing.

The Petitioner testified that he graduated from high school, briefly attended Tulane University before joining the military, and attended the Capitol Radio Engineering Institute after leaving the military. He said that he worked on anti-ballistic missiles and anti-aircraft missiles at the White Sands Missile Range and that he "did design work for the radar system." He agreed that he also worked for BellSouth for many years and that after he retired, he taught senior citizens about computers.

The Petitioner acknowledged that he confessed to offenses with his granddaughters and daughters when he spoke with the police after his arrest. He agreed that trial counsel told him it was unlikely he would prevail on a motion to suppress the statement and that counsel unsuccessfully attempted to suppress the statement.

On redirect examination, the Petitioner testified that he had not heard the term "mitigation" before trial counsel mentioned it. He agreed counsel informed the trial court at the guilty plea hearing that a mitigated sentence would begin at thirteen and one-half years.

Trial counsel testified that she discussed mitigation with the Petitioner before his guilty plea hearing. She said that she was aware of the Petitioner's history of molesting children before they discussed a mitigated sentence and that, "While I did not give [the Petitioner] any hope that he would get 13.5 years, I at least wanted to preserve that issue . . . ." She said that although she told the Petitioner she did not think he would receive a mitigated sentence, "that doesn't mean that you don't try." She said she introduced exhibits at the sentencing hearing to demonstrate the Petitioner's community involvement but did not remember if she argued that his sentence should be mitigated.

Trial counsel testified that she did not recall discussing with the Petitioner the possibility of going to trial in order to preserve the issue of suppressing his statement to the police. She said the Petitioner did not want a trial because he did not want his granddaughter to have to testify. She said that because the evidence of the offense date was vague, she considered waiving ex post facto rights, but decided against waiver as a matter of trial strategy. She said she did not think she discussed waiver of ex post facto rights with the Petitioner because it was a legal issue and because the Petitioner told the police that he thought his offense took place in the last part of the summer in 2005, which would be after the June 7, 2005 effective date of the amendments to the Sentencing Act that rendered

enhancement and mitigation factors advisory. She agreed that the Petitioner did not waive his ex post facto rights during sentencing and that the trial court treated the sentencing factors as advisory.

Trial counsel testified that she spoke with Dr. William Bell before the sentencing hearing but agreed that at the sentencing hearing, Dr. Bell said the Petitioner told him about incidents involving the Petitioner's granddaughters but not about incidents with the Petitioner's daughters. She did not remember if she told Dr. Bell of the Petitioner's history with his daughters and granddaughters. She agreed that at the sentencing hearing, Al Clemens testified that the Petitioner did not tell him of the Petitioner's legal problems. Counsel did not remember if she spoke with Mr. Clemens before the hearing, but said her practice was always to speak with witnesses before they testified. She agreed Francis Mazzaferro testified that she was unaware that the Petitioner admitted molesting his daughters and his other granddaughter. Counsel agreed that it appeared Ms. Mazzaferro was not informed of the Petitioner's criminal history. She agreed Leon Hart testified that he was unaware that the Petitioner admitted molesting his daughters. Counsel said that she did not remember what she said to each of these witnesses before they testified but that she spoke with each of them before they testified. She agreed she knew the Petitioner had no previous criminal convictions but did not know if he had any previous involvement with the criminal justice system.

On cross-examination, trial counsel testified that she was licensed to practice law in Tennessee in 1997, that she had been in private practice for four years when she represented the Petitioner, and that she worked as an assistant district attorney for six years before beginning her private practice. She agreed she met with the Petitioner numerous times and discussed his charges and the punishment he faced if convicted at a trial. She agreed she told the Petitioner that she did not think he would be sentenced to the minimum and that she thought he would most likely be sentenced to twenty years or more. She agreed the Petitioner did not express a desire for a trial. She acknowledged that the Petitioner's plea agreement was not the first offer presented by the State and that previous offers would have required him to plead guilty to more than one offense. She agreed the Petitioner could have received consecutive sentences if he pled guilty to more than one offense. She agreed she introduced evidence at the sentencing hearing in an attempt to mitigate the Petitioner's sentence.

Trial counsel acknowledged that in the Petitioner's confession to the police, he said he thought his offenses occurred during the late summer of 2005. She agreed that the indictment stated the Petitioner's offenses occurred between May and September 2005 and that she sought and obtained a bill of particulars in which the State clarified that the offenses occurred during the summer of 2005 when the victim visited the Petitioner during her summer break from school.

Trial counsel testified that she worked with the Petitioner and his wife to have witnesses appear on his behalf at the sentencing hearing but that she did not have much to introduce at the hearing other than evidence of his societal contributions and of his lack of criminal convictions. She said she told the Petitioner's wife that witnesses would be cross-examined by the State about the nature of the offense to which the Petitioner pled guilty and that the witnesses should know the Petitioner was convicted of rape of a child and the facts surrounding the case.

Trial counsel testified that although she filed a motion to suppress the Petitioner's confession, she did not think the motion would succeed. She said the State had an "ironclad confession" because the Petitioner signed a Miranda waiver and did not appear to be under duress when he confessed. She said that in her opinion, it was not worth going to trial to preserve the suppression issue for appeal. She said that she considered preserving the issue as a certified question of law but that the State did not normally agree to certification of such an issue. On redirect examination, trial counsel agreed that it was not the Petitioner's wife's responsibility to prepare witnesses for the sentencing hearing.

Appellate counsel acknowledged that transcripts of the suppression hearing and the guilty plea hearing were not included in the direct appeal record. He said he did not consider raising the issue that the Petitioner's sentence constituted cruel and unusual punishment in light of the Petitioner's age.

On cross-examination, appellate counsel testified that he did not include transcripts of the suppression hearing and the guilty plea hearing in the direct appeal record because they "did not bear upon the very discrete issues" that were presented on appeal. He said he consulted with trial counsel and determined that the transcripts were not necessary to resolve the sentencing issues raised on appeal.

In denying the petition for post-conviction relief, the trial court found that the Petitioner pled guilty after meeting with trial counsel numerous times and fully discussing the possible outcomes of the case. The court found that before pleading guilty, the Petitioner knew the range of punishment he faced at sentencing and knew of counsel's belief that he would be sentenced to more than twenty years. The court found that at the guilty plea hearing, the Petitioner indicated that his plea was voluntary and that he understood his rights. The court found that trial counsel's testimony was more credible than the Petitioner's testimony and that counsel followed the Petitioner's instructions by negotiating for the best possible outcome and avoiding a trial at which the Petitioner's granddaughter would have been required to testify. The court also found that there was no evidence that the Petitioner ever insisted on a trial.

With regard to trial counsel's failure to address waiver of the Petitioner's ex post facto rights before sentencing, the trial court found that trial counsel made the tactical decision not to waive the rights and that counsel was not ineffective because the evidence supported an offense date after June 7, 2005. With regard to counsel's failure to preserve for appeal the motion to suppress the Petitioner's confession to the police, the court found that the Petitioner's allegations "at best, merely 'second guess' the tactical and strategic choices made by trial counsel" and that the Petitioner failed to present clear and convincing evidence that counsel was ineffective. With regard to counsel's failure to prepare witnesses for the sentencing hearing, the court found that the Petitioner failed to establish prejudice because the sentencing court was aware that the Petitioner molested more than one child and because it was "inconsequential" that the witnesses were not aware of the other offenses.

With regard to appellate counsel's failure to include transcripts of the suppression hearing and the guilty plea hearing in the record on direct appeal, the trial court found that the Petitioner failed to establish prejudice because other evidence in the record indicated the date of the Petitioner's offense and because the transcript of the sentencing hearing allowed the Court of Criminal Appeals to know "exactly the basis for the ruling of the trial court" when the court reviewed the Petitioner's sentence on appeal. With regard to counsel's failure to argue that the Petitioner's sentence constituted cruel and unusual punishment, the court found that the Petitioner failed to present any authority to support his argument. This appeal followed.

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006); Dellinger v. State, 279 S.W.3d 282, 294 (Tenn. 2009). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103 (2006).

**I**

The Petitioner contends that his guilty plea was not voluntarily and knowingly entered because he believed he would receive a sentence of thirteen and one-half years. He argues that trial counsel should not have informed him that he could be sentenced as a mitigated offender to thirteen and one-half years because there was "no reason" that the trial court would consider the mitigated sentence in light of evidence showing that the Petitioner committed offenses against his daughters and granddaughters. The State contends that trial counsel properly advised the Petitioner on the range of the possible sentence and that the Petitioner failed to establish that his plea was not knowingly and voluntarily made. We

conclude that the Petitioner failed to establish that his plea was not knowingly and voluntarily made.

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. See State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). The circumstances include

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (citing Caudill v. Jago, 747 F.2d 1046, 1052 (6th Cir. 1984)). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." Blankenship, 858 S.W.2d at 904.

The record reflects that before the guilty plea hearing, trial counsel provided the Petitioner with complete information regarding the possible outcomes at the sentencing hearing. See T.C.A. §§ 40-35-109, -112 (2010). Counsel met with the Petitioner five or six times and told the Petitioner that although the standard range for the sentence was fifteen to twenty-five years, he could potentially be sentenced to as little as thirteen and one-half years as a mitigated offender. Although counsel also told the Petitioner that she doubted he would be sentenced as a mitigated offender and that she thought he would be sentenced to more than twenty years, we note that under the facts of this case, it was unrealistic for counsel to tell the Petitioner that he could potentially be sentenced as a mitigated offender. Such advice presented the risk of creating false expectations regarding sentencing. Despite this risk, the Petitioner has failed to establish that his plea was not knowingly and voluntarily entered.

At the guilty plea hearing, the Petitioner affirmed that he understood the rights he waived pursuant to his guilty plea. He said he understood that the plea agreement contained no provision regarding the sentence, that the range of punishment would be from fifteen to twenty-five years, and that he would be required to serve 100% of his sentence. The Petitioner said that he wanted to plead guilty, that he was not forced to enter into the plea

agreement or promised anything in exchange for the plea, and that he entered into the plea knowingly and voluntarily.

Although the Petitioner argues that he thought he would be sentenced to thirteen and one-half years, he agreed at the post-conviction hearing that the trial court told him at the guilty plea hearing that all sentencing issues would be determined by the court and that the range of punishment would be from fifteen to twenty-five years. He also agreed that he was never told by the trial court that thirteen and one-half years would be the maximum sentence. Furthermore, he agreed trial counsel told him that she seriously doubted he would be sentenced to thirteen and one-half years and that he would most likely be sentenced to twenty years or more. The evidence does not preponderate against the trial court's findings that the Petitioner pled guilty after meeting with trial counsel numerous times and that the Petitioner knew the range of punishment he faced before he entered his guilty plea. The Petitioner is not entitled to relief.

## II

The Petitioner contends that trial counsel rendered ineffective assistance by failing to preserve a suppression issue for appeal, failing to address waiver of his ex post facto rights before sentencing, and failing to prepare witnesses for the sentencing hearing. The State contends that the Petitioner has not established that trial counsel was ineffective or that he was prejudiced by any claimed deficiencies. We conclude that the Petitioner has not established that he was prejudiced by counsel's actions.

As noted above, the burden in a post-conviction proceeding is on the petitioner to prove the allegations of fact by clear and convincing evidence. T.C.A. § 40-30-110(f); Dellinger, 279 S.W.3d at 294. Once a petitioner establishes the fact of counsel's errors, the trial court must determine whether those errors resulted in the ineffective assistance of counsel. Dellinger, 279 S.W.3d at 293; see Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457 (Tenn. 2001).

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland, 466 U.S. at 687; see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). The performance

prong requires a petitioner raising a claim of ineffectiveness to show that counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. In the context of a guilty plea, the prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). See Baxter, 523 S.W.2d at 936. Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982); see DeCoster, 487 F.2d at 1201.

With regard to trial counsel's failure to preserve the issue of suppressing the Petitioner's confession to the police, the Petitioner argues that trial counsel should have reserved the issue as a certified question of law or had a trial to preserve the issue because the motion to suppress "had merit and deserved to be reviewed" on appeal. We disagree. The record reflects that although trial counsel filed a motion to suppress the Petitioner's confession, she did not think the motion would succeed. She said the State had an "ironclad confession" because the Petitioner signed a Miranda waiver and did not appear to be under duress when he confessed. Counsel thought the risk of a trial outweighed preserving the suppression issue for appeal. She said that she considered preserving the issue as a certified question of law but that the State did not normally agree to certification of such an issue. She said the Petitioner did not want a trial because he did not want his granddaughter to be required to testify.

We note that a certified appeal regarding the admissibility of the confession was not a proper procedure in this case because it would not have been dispositive of the case. See Tenn. R. Crim. P. 37(b)(2); State v. Wilkes, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984) ("An issue is dispositive when this court must either affirm the judgment or reverse and dismiss."). In any event, the Petitioner offers no authority to support his belief that his confession was subject to suppression or that counsel was ineffective for failing to preserve the issue for appeal, nor does he allege that he would have gone to trial but for trial counsel's failure to preserve the issue. The Petitioner has not established that counsel was deficient for failing to preserve the suppression issue or that he was prejudiced as a result.

With regard to trial counsel's failure to address waiver of the Petitioner's ex post facto rights before sentencing, the Petitioner contends that counsel was ineffective and that he was prejudiced because he was sentenced under the current sentencing law, which rendered the enhancement and mitigating factors advisory and allowed the trial court to sentence him anywhere in the applicable range. We disagree. On June 7, 2005, the Tennessee General Assembly amended the Tennessee Criminal Sentencing Reform Act of 1989. See T.C.A. §§ 40-35-102(6), -114, -210, -401 (2003 & Supp. 2005); 2005 Tenn. Pub. Acts ch. 353, §§ 1, 5, 6, 8. The amended act provides that the court shall set a sentence within the range, that the court consider that the minimum sentence should be imposed, and that the length should be adjusted as appropriate for any enhancement and mitigating factors. T.C.A. § 40-35-210(c). The court "shall consider, but is not bound by" certain "advisory sentencing guidelines," which include that the sentence be adjusted, as appropriate, for any enhancement or mitigating factors shown. T.C.A. § 40-35-210(c)(2).

> This act shall apply to sentencing for criminal offenses committed on or after [June 7, 2005]. Offenses committed prior thereto shall be governed by prior law, which shall apply in all respects. However, for defendants who are sentenced after the effective date of this act for offenses committed on or after July 1, 1982, the defendant may elect to be sentenced under the provisions of this act by executing a waiver of such defendant's ex post facto protections.

T.C.A. § 40-35-210, Compiler's Notes.

As noted by this court on direct appeal, "the defendant himself, in his interview with police detectives, stated that the crime occurred during '[t]he last part of the summer.'" Joseph S. Lucas, Jr., slip op. at 5. The court concluded that this was sufficient proof to find that the crime occurred after the June 7, 2005 effective date of the amendments. Id. The evidence does not preponderate against the trial court's finding that the evidence supported an offense date after June 7, 2005. Because the evidence supported an offense date after June

-12-

7, 2005, the amended sentencing act applied, and the waiver of ex post facto rights was not an option. See T.C.A. § 40-35-210, Compiler's Notes.

Furthermore, had the offense occurred before June 7, 2005, the waiver of ex post facto rights would have resulted in the Petitioner being sentenced under the amended sentencing act, not the previous act as the Petitioner argues. See id. Therefore, a waiver of the Petitioner's ex post facto rights would have resulted in the trial court applying the same sentencing law that was applied at the sentencing hearing. The Petitioner has not established that counsel was deficient for failing to address waiver of the Petitioner's ex post facto rights or that he was prejudiced as a result.

With regard to trial counsel's failure to inform the witnesses at the sentencing hearing of the complete charges brought against the Petitioner and of his admission that he committed offenses against his daughters and granddaughters, counsel testified that she sought to present evidence at the sentencing hearing of the Petitioner's societal contributions and of his lack of criminal convictions. Her normal practice was always to speak with witnesses before they testified, but the record reflects that defense witnesses did not know that in addition to the offense against his granddaughter for which the Petitioner pled guilty, the Petitioner also admitted to offenses against his daughters and his other granddaughter.

The Petitioner contends that he was prejudiced because the witnesses' testimony on behalf of the Petitioner was rendered "totally ineffective" when they were "caught by surprise" with information that the Petitioner molested his daughters in addition to his granddaughters. The record reflects that the trial court was already aware of the Petitioner's criminal history and that although the defense witnesses did not have a complete understanding of the Petitioner's criminal offenses, they were prepared to testify about the Petitioner's societal contributions, his positive employment history, and his efforts to change his behavior through therapy and group meetings. The Petitioner has not indicated why the witnesses' testimony would lose all of its impact due to their lack of knowledge regarding the Petitioner's criminal history. The Petitioner has likewise not stated how the outcome of the sentencing hearing would have been different had the witnesses known of his history. The Petitioner has not established that a reasonable probability exists that, but for counsel's failure to inform the witnesses of the complete charges brought against the Petitioner and of his admission that he committed offenses against his daughters and granddaughters, the result of the proceeding would have been different. The Petitioner is not entitled to relief.

### III

The Petitioner contends that appellate counsel rendered ineffective assistance by failing to include transcripts of the suppression hearing and the guilty plea hearing in the

record on direct appeal, failing to request a rehearing, and failing to argue that the Petitioner's sentence constituted cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. The State contends that the Petitioner failed to establish that counsel was ineffective or that he was prejudiced by any claimed deficiency. We conclude that the Petitioner failed to establish that he was prejudiced by counsel's actions.

With regard to appellate counsel's failure to include transcripts of the suppression hearing and the guilty plea hearing in the record on direct appeal, a defendant is required to prepare an appellate record that conveys a fair, accurate, and complete account of what transpired with respect to those issues that are the bases of the appeal. T.R.A.P. 24(b); State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993). On direct appeal, this court noted that the Petitioner "failed to include transcripts of the suppression and guilty plea hearings, which the court specifically stated it would rely on in imposing sentence. It is the defendant's burden to ensure that an adequate record is before this court." Joseph S. Lucas, Jr., slip op. at 5. Because appellate counsel did not include these transcripts in the appellate record, he failed to prepare an adequate record.

The Petitioner argues that he was prejudiced by this deficiency because neither the trial court nor this court could have concluded that the offense occurred after June 7, 2005, if they had been able to review these transcripts. The Petitioner points to three instances of testimony during the suppression hearing that he alleges would have rendered this court unable to conclude that the offense occurred after June 7, 2005. In the first, Detective David Beard was asked if he asked the Petitioner if the offenses took place on one day. Detective Beard responded, "It was all in one day, plus I remember asking him, Mr. Lucas, how many times he had kept . . . [the victim] over a period of time." In the second, Detective Tameka Sanders testified that during her interview with the Petitioner, he said the offenses occurred "in the summer of 2005, summer break, and he said the last part of the summer he thought." In the third instance, Detective Sanders testified that the victim "talked about several occasions . . . she said it was during summer break from her second grade going into third grade."

The trial court and this court could have concluded that the offense occurred after June 7, 2005, despite being able to review these transcripts. None of the statements cited by the Petitioner indicated that the offense occurred before June 7, 2005. Additionally, the second statement bolsters the time frame mentioned by the Petitioner during his interview with the police, when he said that the offense occurred over the victim's summer break, during the "last part of the summer I think . . . I've never been good with dates." On direct appeal, this court concluded that the time frame mentioned by the Petitioner during his interview was sufficient proof to allow the trial court to find that the crime occurred after the

June 7, 2005 effective date of the sentencing act amendments. Joseph S. Lucas, Jr., slip op. at 5. The Petitioner has not established that a reasonable probability exists that, but for counsel's failure to include transcripts of the suppression hearing and the guilty plea hearing in the record on direct appeal, the result of the appeal would have been different.

With regard to appellate counsel's failing to request a rehearing, the Petitioner argues that in determining if the trial court erred by applying the amended sentencing act, this court relied on the Petitioner's statement that the offense occurred during the last part of the summer, but did not acknowledge that the Petitioner followed the statement with "I think . . . I've never been good with dates." He argues that counsel was ineffective because he failed to request a rehearing to present the statement in its entirety to this court. We disagree. The record on direct appeal contained a transcript of the Petitioner's interview with the police. The Petitioner's complete statement regarding the time of his offense was already before this court, and a motion for a rehearing in which the statement could be repeated would have added nothing to the court's ability to resolve his appeal. The Petitioner has not established that counsel was ineffective for failing to request a rehearing or that there is a reasonable probability that the result of the appeal would have been different had counsel requested the rehearing.

With regard to appellate counsel's failing to argue that the Petitioner's sentence constituted cruel and unusual punishment in violation of the Eighth Amendment, the Petitioner concedes that no authority supports his argument that sentencing a seventy-year-old person to twenty-five years incarceration constitutes cruel and unusual punishment. We agree with the trial court that counsel cannot be considered to have rendered ineffective assistance by failing to argue an issue that lacked legal authority to support the argument. The Petitioner has not established that counsel was ineffective for failing to argue that the Petitioner's sentence constituted cruel and unusual punishment or that a reasonable probability exists that the result of the appeal would have been different had counsel presented the issue on appeal.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE